21UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEAGRAPE INVESTORS LLC,

                    Plaintiff,

        v.

KALEIL ISAZA TUZMAN, MICHAEL
SINGER, THE SINGER 1995 FAMILY
TRUST, INNOCREATIVE CAPITAL LLC,
KIT CAPITAL (NEVIS) LLC, OBRA PIA
LTD., OBRA PIA (US) FEEDER, LP, OBRA
PIA MANAGEMENT, GP, LTD. and OBRA
PIA LTD., SURCUSAL COLOMBIA,

                    Defendants.

---

No. 21-cv-7517 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Seagrape Investors LLC brings this diversity-jurisdiction action in connection

with a failed hotel development project against several individuals and entities, including a limited

partnership named Obra Pia (U.S.) Feeder, LP ("OP Feeder") that Seagrape invested in.  Before

this action was filed, Seagrape brought a related action (the "First Seagrape Action") against many

of the same Defendants, including OP Feeder, which has been pending before this Court since

2019.  *See* Case No. 19-cv-9736 (S.D.N.Y.).  In September 2020, the Court issued an order

directing Seagrape to clarify its citizenship so the Court could assess whether diversity jurisdiction

was present. *See* First Seagrape Action Dkt. No. 76.  Seagrape responded by asserting that "federal

diversity jurisdiction [was] amply established" because "none of the OP parties" shared Seagrape's

citizenship.   First Seagrape Action Dkt. No. 77 at 1–2.  It also explained that the Court had

supplemental jurisdiction over the First Seagrape Action, which at that time also included federal

securities claims.  *See id.* at 2.

Several years later, on August 21, 2025, the Court ordered Seagrape to further clarify diversity of citizenship in this action so that it could itself confirm that the requirements were met. Dkt. No. 89. In its response, Seagrape reversed course and conceded that diversity jurisdiction was *not* present after all, because *it* shared citizenship with OP Feeder. Dkt. No. 90. As Seagrape's letter explained, "Seagrape itself is a limited partner in OP Feeder," which under well-established jurisdictional rules means that OP Feeder takes the same citizenship as Seagrape. *Id.* at 2. Despite the belated reversal, Seagrape sought leave to amend its complaint and drop OP Feeder as a party under Rule 21. *See id.* at 2. Defendants opposed that application, arguing that OP Feeder was an "indispensable" party that could not be dropped under Rule 19. *See* Dkt. No. 91. For the reasons that follow, the Court agrees with Defendants that OP Feeder is an indispensable party that cannot be absent under Rule 19. It therefore dismisses the action for lack of jurisdiction, denying Seagrape's application to drop OP Feeder as a party.

## BACKGROUND

The Court assumes the parties' familiarity with the facts and history of this case, which it detailed at length in its earlier opinion. *See Seagrape Invs. LLC v. Tuzman*, No. 21-cv-7517 (RA), 2024 WL 4337448 (S.D.N.Y. Sept. 26, 2024). By way of brief summary, this action involves a failed luxury hotel development project (the "Project") in Cartagena, Colombia. Dkt. No. 75 ("Compl.") ¶¶ 32–38. About a decade ago, Seagrape invested in the development of the Project by purchasing limited partnership units in OP Feeder. *Id.* ¶ 33. OP Feeder in turn invested those funds in "convertible debt" of Defendant Obra Pia Ltd. ("Obra Pia"), a British Virgin Islands corporation that oversaw development of the Project on the ground. Dkt. No. 85-6 ("OP Feeder LP Agreement") § 1.5(a). Soon after work began, however, the Project ran into trouble and the parties began searching for a third party to bail it out. *Id.* ¶ 43. Once a potential buyer was found,

the parties entered into two agreements—the Credit Security Acknowledgment (the "CSA") and the Subordination Agreement—to facilitate the buyout. *Id.* ¶ 46–57. Among other things, the CSA required Seagrape to temporarily forebear from foreclosing on the Project, *id.* ¶ 47, and barred its counterparties from granting others a security interest in the Project and other assets that had been committed to Seagrape as collateral, *id.* ¶ 52. Although OP Feeder did not sign the CSA in its own name, Seagrape asserts that its general partner Obra Pia Management, GP, Ltd. ("OP Manager"), signed it on OP Feeder's behalf. *See* Dkt. No. 85-2 ("CSA") at 1; *see also* Dkt. No. 84 ("Seagrape Opp'n") at 6–7. OP Feeder also signed the Subordination Agreement, which extended $1.5 million in loans to Obra Pia that OP Feeder agreed would take senior status over its own right to payment from Obra Pia. Compl. ¶ 57; Dkt. No. 75-5 ("Subordination Agreement") § 1(a).

Despite these efforts, the buyout fell through, and Seagrape notified Defendants that it intended to declare default under the CSA and enforce the mortgage it held against the Project. Compl. ¶ 62–63. After Seagrape served a statutory demand on Obra Pia for the money it was owed, Obra Pia obtained a litigation loan from Defendant Innocreative Capital LLC, *id.* ¶¶ 65–70, which was controlled by Defendants Michael Singer and the Singer 1995 Family Trust, *id.* ¶¶ 11–12. Obra Pia then filed an action against Seagrape in the British Virgin Islands, and soon after filed another suit against it in New York State court (the "Obra Pia Action"), which OP Feeder joined as a co-plaintiff. *Id.* ¶¶ 75–82. Shortly after the Obra Pia Action was filed, Seagrape removed the suit to this Court, invoking federal diversity jurisdiction. *See* Case No. 19-cv-7840 (S.D.N.Y.) ("Obra Pia Action") Dkt. No. 1. In its notice of removal in that action, Seagrape acknowledged that it was not diverse to OP Feeder, because "Seagrape is among the limited partners of OP Feeder, which would impute Seagrape's Florida citizenship to OP Feeder and

destroy diversity." *Id.* ¶ 4. Seagrape took the position, however, that OP Feeder had been improperly named as a plaintiff in order to defeat diversity, which none of the defendants contested at the time. *Id.* ¶ 4; *see also* Obra Pia Action Dkt. No. 24 at 2 (joint letter from parties asserting that complete diversity was present and stating that OP Feeder "is a limited partnership formed under the laws of the BVI").

As litigation progressed, Obra Pia began exploring other ways to fund its lawsuits, and entered into several more funding arrangements with Innocreative, OP Feeder and other Defendants. Most relevant here, in October 2019 Obra Pia entered into an agreement (the "First Amendment") with OP Feeder and Innocreative that extended an additional $3.5 million in credit to Obra Pia and purported to grant Innocreative a lien on the Project and the other collateral committed to Seagrape. Compl. ¶¶ 99–101. According to Seagrape, this agreement violated the CSA, which prohibited the conveyance of interests in those assets without Seagrape's consent.

A week later, on October 22, 2019, Seagrape filed the First Seagrape Action against Obra Pia, OP Feeder, OP Manager and several other parties affiliated with them, asserting claims for federal securities fraud, common-law fraud, breach of contract, breach of fiduciary duty and attorney misconduct. First Seagrape Action Dkt. No. 1. After the defendants moved to dismiss, the Court ordered Seagrape to clarity the citizenship of its LLC members so diversity jurisdiction could be assessed. First Seagrape Action Dkt. No. 76. Seagrape responded with a letter asserting that its members were citizens of Florida and Pennsylvania and that "none of the OP Parties" shared those citizenships—a statement in direct contradiction with Seagrape's notice of removal in the Obra Pia Action, which acknowledged that Seagrape shared citizenship with OP Feeder. Dkt. No. 77 at 1–2. In addition to diversity jurisdiction, Seagrape's letter also asserted that the

Court had supplemental jurisdiction over the state-law claims by way of Seagrape's federal securities claim. *Id.* at 2 (citing "Seagrape's claim under § 10(b) of the Securities Exchange Act").

While that suit was pending, Seagrape filed this action in September 2021, against Obra Pia, OP Feeder and other parties affiliated with them and Innocreative. *See* Dkt. No. 1. As relevant here, the original complaint asserted state-law claims for breach of contract, tortious interference with contract, actual and constructive fraudulent conveyance and malicious prosecution. *See id.* Seagrape alleged that the Court had diversity jurisdiction over this action because all opposing parties were citizens of different states. Defendants moved to dismiss for failure to state a claim, which the Court granted in part and denied in part. *See Seagrape*, 2024 WL 4337448, at *20.

Seagrape then filed a second amended complaint, Dkt. No. 72, which it amended once more (on consent) in order to address several issues that Defendants had raised, Dkt. Nos. 75–77. On January 3, 2025, Defendants filed a motion to dismiss the third amended complaint (the "Complaint"), as well as a motion for sanctions, both of which are pending before the Court. Dkt. No. 78.

On August 21, 2025, the Court directed Seagrape to clarify the citizenship of all parties, including LLCs and partnerships, so the Court could assess whether diversity jurisdiction was present. Dkt. No. 89. In its response, Seagrape conceded that "Seagrape cannot establish diversity jurisdiction as to OP Feeder, because Seagrape itself is a limited partner in OP Feeder," and thus shares its citizenship. Dkt. No. 90 at 2. Seagrape acknowledged that it had taken a contrary position in the letter it submitted in the First Seagrape Action, and indicated that it had realized its error "upon further review." *Id.* In order to remedy this defect, Seagrape sought leave to amend its complaint to drop OP Feeder under Rule 21, which would preserve diversity jurisdiction.

Defendants opposed that request, asserting that OP Feeder was an "indispensable" party that could not be dropped under Rule 19. Dkt. No. 91 at 2. The Court invited the parties to file additional briefing on this issue, which they did. Dkt. Nos. 92–96.

## LEGAL STANDARD

A court may raise the issue of subject matter jurisdiction *sua sponte*. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 107 (2d Cir. 1997). In order for a court to have diversity jurisdiction over a matter, there must be complete diversity between opposing parties. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990). Although Federal Rule of Civil Procedure 21 permits plaintiffs to drop a non-diverse defendant, they may not do so when the defendant qualifies as an "indispensable" party under Rule 19. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989).

## DISCUSSION

At the outset, there is no dispute that diversity jurisdiction is lacking here. All agree that Seagrape and OP Feeder share the same citizenship, because "Seagrape itself is a limited partner in OP Feeder." Dkt. No. 90; *see also Carden*, 494 U.S. at 195–96 (holding that a limited partnership takes the citizenship of all of its partners, including limited ones). This suit therefore may not proceed so long as OP Feeder remains a party to it.

Seagrape proposes to address this issue by dropping OP Feeder as a party under Rule 21, Dkt. No. 90, which empowers a court to "drop a party" on motion or on its own accord, Fed. R. Civ. P. 21. Defendants oppose that request, asserting that OP Feeder qualifies as an "indispensable" party under Rule 19 that cannot be omitted from the action. *See* Dkt. Nos. 91, 93, 96. As it points out, OP Feeder is a signatory to multiple of the contracts at issue in this dispute, which poses a risk of prejudice if this suit proceeds without it. The Court agrees.

6

Under Federal Rule of Civil Procedure 21, a court may "drop[]" a non-diverse defendant from a suit, so long as it is not indispensable to the action under Rule 19. *See Newman-Green, Inc.*, 490 U.S. at 832. Deciding whether a defendant is "indispensable" under Rule 19 follows a "two-step test." *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2000). First, the court decides whether the party is "necessary" under Rule 19(a), which occurs when: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

If the party is found to be necessary, then the court must determine whether it is "indispensable" under Rule 19(b). *See Viacom Int'l*, 212 F.3d at 725. Rule 19(b) requires the court to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b). When an absent party meets this standard, it cannot be dropped from the suit and the court must dismiss the action for "nonjoinder." *See Viacom Int'l*, 212 F.3d at 725 (quoting Fed. R. Civ. P. 19(b)).

Applying that test here, the Court concludes that OP Feeder is both a necessary and indispensable party, and thus may not be omitted from this action.

## I.     Rule 19(a):  Necessary Party

The Court first finds that OP Feeder is a "necessary" party under Rule 19(a), because it is a party to a contract—the First Amendment—that Seagrape's suit aims to cancel.  As the Second Circuit has held, "[i]f the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a)." *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002); *see also Peregrine Myan. Ltd. v. Segal*, 89 F.3d 41, 48 (2d Cir. 1996) ("The key issue in deciding whether either part of Rule 19(a) applies is the extent to which this case requires a determination of rights and interests under the [contract] to which the [absent entity] is a party.").  That describes OP Feeder to a tee.  Seagrape's fraudulent transfer claims seek to cancel the First Agreement, the contract that OP Feeder executed so that Obra Pia could receive a multi-million dollar litigation loan from Innocreative.  Canceling this agreement would unmistakably re-define OP Feeder's rights and obligations; indeed, "all parties to a contract are generally regarded as necessary parties, particularly when issues such as cancellation of the agreement are at issue."  *Spencer Stuart Hum. Res. Consultancy (Shanghai) Co. v. Am. Indus. Acquisition Corp.*, No. 17-cv-2195 (DLC), 2017 WL 4570791, at *3 (S.D.N.Y. Oct. 17, 2017).

Seagrape's breach-of-contract claims, moreover, would require the Court to construe other agreements that OP Feeder signed.  In moving to dismiss, OP Feeder argued that the Subordination Agreement contained a contractual waiver that excused it from breaching certain provisions in the CSA.  *See* Dkt. No. 79 ("Defs. Br.") at 12–14 (arguing that this waiver provision permitted OP Feeder and other signatories to execute the First Amendment).  To resolve that dispute, the Court would need to "determin[e]" OP Feeder's "rights" under the Subordination Agreement, and whether those rights also impacted its other obligations under the CSA.  *Peregrine Myan.*, 89 F.3d

at 48.[1] This only further confirms that OP Feeder is necessary here. *See also Baldwin v. Interscope Records, Inc.*, 19-cv-8923 (JGK), 2021 WL 847976, at \*5 (S.D.N.Y. Mar. 4, 2021) (collecting cases finding that party to contract in dispute is necessary under Rule 19(a)); *Glob. Disc. Travel Servs., LLC v. Trans World Airlines*, 960 F. Supp. 701, 707 (S.D.N.Y. 1997) ("As a direct party to the contract that is under dispute, [the absent entity] is a necessary party to this litigation.").

## II.    Rule 19(b):  Indispensable Party

Having found that OP Feeder is a necessary party, the Court now must assess whether it qualifies as "indispensable" under Rule 19(b).  If so, then Seagrape may not amend the complaint to omit OP Feeder, and the action will be dismissed.

As the Second Circuit has explained, there is no "bright-line rule that all parties to a contract are indispensable." *CP Sols. PTE, Ltd. v. Gen. Elec.*, 553 F.3d 156, 159 (2d Cir. 2009). Courts must instead apply each of the Rule 19(b) factors—prejudice, protective provisions, adequacy of relief and adequacy of alternate remedies—to assess indispensability. *See id.* None of these factors are dispositive and courts have "substantial discretion . . . whether the action should go forward" without the absent party." *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984) (internal quotation marks omitted).

Applying those factors here, the Court concludes that OP Feeder is indispensable to this suit.  First, allowing this action to proceed in its absence would prejudice OP Feeder, as it possesses contract rights that are "inextricably intertwined" with Seagrape's claims in this action. *Envirotech Corp.*, 729 F.2d at 75 (internal quotation marks omitted); *see also Vision en Analisis y Estrategia,*

---

[1] Although Seagrape's recent letter now insists that "OP Feeder is not a party to the CSA," Dkt. No. 94 at 2, that is in clear contradiction of the arguments it made in its opposition, *see* Seagrape Opp'n at 6–7 (explaining that "OP Management executed the CSA, necessarily acting as an agent of OP Feeder" and citing cases holding that general partner's acts can "bind[] the partnership").  "A party cannot occupy inconsistent positions in the same matter," and Seagrape cannot have it both ways here. *Equitable Tr. Co. of N.Y. v. Conn. Brass & Mfg. Corp.*, 290 F. 712, 726 (2d Cir. 1923).

*S.A. de C.V. v. Andersen*, No. 14-cv-8016 (SAS), 2015 WL 4510772, at *5 (S.D.N.Y. July 24, 2015) (finding party indispensable when it played "prominen[t]" role in contract allegations). If the Court rules for Seagrape on its fraudulent transfer claims, it would void—and thereby "address the validity" of—the First Amendment, which OP Feeder executed and has an interest in preserving. *Baldwin*, 2021 WL 847976, at *6. Indeed, the purpose of the First Amendment was to extend sizable litigation loans to Obra Pia so that it could fight off Seagrape's insolvency claims and stay afloat. OP Feeder, in turn, has a considerable interest in Obra Pia's survival, given that it is contractually required to invest "all or substantially all [of] its capital" in Obra Pia's debt. OP Feeder LP Agreement § 1.5(a). Undoing the First Amendment would threaten real harm to OP Feeder's interests, and it would undoubtedly be prejudiced by having to watch from the sidelines.

OP Feeder plays a similarly prominent role in Seagrape's breach-of-contract claims, as it signed (or had its agent sign on its behalf) both the Subordination Agreement and the CSA. Among other things, these claims seek to hold OP Manager vicariously liable for OP Feeder's breach of the CSA, by showing that OP Feeder is insolvent and that OP Manager should be held liable as its general partner. *See* Seagrape Opp'n at 6–7. Proceeding without OP Feeder would thus also prejudice it with respect to the contract claims, since a ruling for Seagrape would address "whether [OP Feeder] breached [its] obligations under the agreement[s]." *Baldwin*, 2021 WL 847976, at *6. Put simply, OP Feeder "possesse[s] rights arising from the agreements at issue which are inextricably intertwined with issues bound to be raised in an action solely against [the other Defendants]." *Envirotech Corp.*, 729 F.2d at 75 (internal quotation marks omitted).

Nor would dismissing this case cause undue prejudice to Seagrape. To be sure, Seagrape may need to begin anew in another forum, after spending several years litigating the pleadings before this Court. *See CP Sols.*, 553 F.3d at 159 (dismissal after several years may cause

prejudice). But Seagrape has only itself to blame for those wasted efforts. Five years ago, in the First Seagrape Action, the Court explicitly asked Seagrape to confirm that complete diversity was present, and it falsely told the Court that OP Feeder was diverse from it. *See* First Seagrape Action Dkt. No. 77 at 1–2 ("[F]ederal diversity jurisdiction is amply established. . . . Because none of the OP Parties . . . are residents of Florida or Pennsylvania, there is complete diversity."). Seagrape cannot claim ignorance of the diversity defect either. This is not a case where it belatedly learned that some obscure partner in OP Feeder shared its citizenship—to the contrary, Seagrape *itself* was the non-diverse partner in OP Feeder. Even worse, Seagrape was well aware of what this meant for diversity jurisdiction, as it stated just a year before in the Obra Pia Action that Seagrape's status as a limited partner "would impute [its] Florida citizenship to OP Feeder and destroy diversity." Obra Pia Action Dkt. No. 1 ¶ 4. Seagrape can "hardly claim" that dismissal would be unfair "when [its] own actions were a significant contributing factor" in the prejudice that dismissal would cause it. *Ramirez v. Collier*, 595 U.S. 411, 435 (2022); *Lukensow v. Harley Cars of N.Y.*, 124 F.R.D. 64, 67 (S.D.N.Y. 1989) ("The fact is that this dismissal results from plaintiffs' own conduct"). And in any event, this case is still at the pleading stage and Seagrape can simply re-use its briefing in another forum, further minimizing the extent of prejudice.

The remaining factors all favor OP Feeder as well, or are at worst neutral. In terms of protective provisions in the judgment, Seagrape "has not come forward with a proposal to shape the relief to avoid the prejudice to an absent [OP Feeder]." *Vedder Price Kaufman & Kammholz v. First Dynasty Mines, Ltd.*, No. 01-cv-3970 (WHP), 2001 WL 1190996, at *2 (S.D.N.Y. Oct. 9, 2001). A judgment without OP Feeder would also be inadequate in light of the "social interest in the efficient administration of justice and avoidance of multiple litigation." *CP Sols.*, 553 F.3d at 159 (internal quotation marks omitted). Seagrape has already brought multiple suits against OP

Feeder, and proceeding without it here creates a risk that Seagrape would continue its proven ways by bringing "piecemeal litigation" against OP Feeder elsewhere. *See Errico v. Stryker Corp.*, 281 F.R.D. 182, 191 (S.D.N.Y. 2012). Nor would dismissal cause great harm to the efficient administration of justice, given that the parties have not yet conducted any discovery in this action. *See CP Sols.*, 553 F.3d at 161. Finally, Seagrape has not asserted that it would not be able to pursue an alternative remedy by filing suit in state or even foreign court. *See Errico*, 281 F.R.D. at 192. And even if there were a barrier to refiling elsewhere, the fact that Seagrape misinformed the Court about OP Feeder's diversity five years ago would still counsel in favor of dismissal of this action. *See Skibs A/S Abaco, Aruba, Astrea & Noruego v. Ardeshir B Cursetjee & Sons*, 133 F. Supp. 465, 468 (S.D.N.Y. 1955) (finding that party barred from bringing dismissed action elsewhere "cannot complain of this result when its own inaction caused this result.").

In sum, proceeding without OP Feeder would cause it demonstrable prejudice, and any harm to Seagrape would largely be due to its own error in failing to disclose that it was a limited partner in the very party it sued years ago—a fact of which it was well aware, as evidenced by its filings in the Obra Pia Action. Because the remaining factors tilt toward OP Feeder as well, the Court finds that it is an indispensable party under Rule 19(b).

## CONCLUSION

For these reasons, the Court concludes that OP Feeder is not only a necessary party but an indispensable one under Rule 19. For that reason, the Court denies Seagrape's application to drop

OP Feeder from the action, and dismisses it for lack of jurisdiction.  The Clerk of Court is respectfully directed to terminate all pending motions and close this case.

SO ORDERED.

Dated:        September 15, 2025
              New York, New York

_____
Ronnie Abrams
United States District Judge